

SO ORDERED.

SIGNED this 26th day of December, 2012.

Dale L. Somers
United States Bankruptcy Judge

_____

Opinion Designated for Electronic Use, But Not for Print Publication
IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In re:

TERRA BENTLEY II, LLC,

　　　　　　　　　　DEBTOR.

CASE NO. 09-23107-11
CHAPTER 11

OPINION GRANTING MOTION TO DISMISS FILED

BY VILLAGE OF OVERLAND POINTE

This matter is before the Court on a motion to dismiss filed by Village of Overland Pointe, LLC ("Village"). Village appears by counsel Joanne B. Stutz of Evans & Mullinix, P.A. The Debtor appears by counsel James F.B. Daniels of McDowell Rice Smith & Buchanan. The Court has reviewed the relevant pleadings and is now ready to rule.

The Debtor owns certain partially-developed real property and has no other

significant assets. It filed this Chapter 11 case more than three years ago, but has yet to obtain confirmation of a plan of reorganization. Before the Debtor filed bankruptcy, it litigated with Village their respective rights in the Debtor's property, and the lawsuit ended in a judgment that imposed significant obligations on the Debtor and its rights in the property. The main thrust of the Debtor's bankruptcy case has been to try to avoid those obligations, but that effort has failed. As explained below, the Court concludes the time has come to dismiss this case, pursuant to § 1112(b)(1) and (b)(4)(A) and (J), because the bankruptcy estate is suffering a continuing loss or diminution, and there is no reasonable likelihood of rehabilitation.

**FACTS**

Although the parties have suggested many other facts might have a bearing on Village's motion to dismiss, the Court finds only the following undisputed facts to be relevant to its decision.

1. **Background information**

In 2005, the principals of Village and the current principal of the Debtor were on friendly terms. They formed the Debtor as an entity to buy real property located at 135th Street and Mission Road in Leawood, Kansas, that they called Mission Corner. The Debtor borrowed most of the money to buy the property, and gave a mortgage to M&I Bank as security for the loan. Village's principals were the Debtor's initial managers, and they took various steps to develop Mission Corner. In 2006, they arranged for the Debtor to sell an interior lot in the development to Village. By 2007, the parties were disagreeing

2

how to develop Mission Corner, and the Debtor's current principal bought out Village's principals' interests in the Debtor. That summer, the Debtor stopped all the infrastructure construction that had been started, and toward the end of August, sued Village over the development. Village asserted counterclaims, and the parties litigated their dispute in a Kansas state court.

### 2. State court lawsuit

In January 2009, the state court issued a decision that resulted in a final judgment in the lawsuit. To a large degree, Village won. The state court found the Debtor was obliged by the agreement that sold the lot to Village to file a plat for Mission Corner that Village's principals had created before they were bought out, and to build infrastructure for the development that would enable Village to build on its lot. The court granted Village's request for specific performance under the lot sale agreement, and ordered the Debtor: (1) to sign and file the final plat of Mission Corner; (2) to comply with the City of Leawood's ordinance approving the Debtor's preliminary plan and plat, including getting off-site road and utility improvements completed; (3) to comply with the City's ordinance approving the final plan and plat, including getting off-site road and utility improvements completed; (4) to complete all on-site infrastructure, including internal streets and all utilities; (5) to do everything specified in a letter from the City to be necessary for Village to obtain a building permit; and (6) to pay all governmental or other fees and costs required of the developer for Village to obtain a building permit. The court awarded Village $1.362 million as damages for the Debtor's delay in completing the

3

infrastructure.

The Debtor appealed the state court's decision, but the parties have never presented any information about the status of that appeal.

### 3. The Debtor's bankruptcy case

#### a. The Debtor's effort to avoid Village's state court judgment

The Debtor filed a Chapter 11 bankruptcy petition on September 18, 2009, eight months after the state court's final decision. In its Schedules, the Debtor reported that it owned Mission Corner and had a credit with its first mortgage holder for almost $55,000 in prepaid interest, but that it had no other assets. A few days after filing bankruptcy, the Debtor filed an adversary complaint, Adv. No. 09-6099, seeking to avoid as fraudulent transfers a number of transactions that affected its rights in Mission Corner; the transactions were: (1) its own adoption and the local government's approval of a development plan and plat for the property, (2) the sale to Village of one lot in the development, and (3) the Debtor's own adoption and the recording of a declaration of covenants and restrictions for the property.

This Court issued a number of rulings about the Debtor's fraudulent transfer claims. In April 2011, the Court determined that Village's state court judgment barred the Debtor's effort to avoid the development plan and plat. At a trial in January 2012, the Court ruled neither the sale of the lot to Village nor the filing of the declarations was done with the intent to hinder, delay, or defraud creditors, so they were not avoidable as actually fraudulent transfers. The Court also denied any part of the Debtor's claims to

4

avoid the development plan or the plat that might not have been denied previously.
Finally, in April 2012, the Court issued an opinion concluding that neither the sale of the lot to Village nor the filing of the declarations constituted a transfer made or obligation incurred by the Debtor without receiving a reasonably equivalent value in exchange, so neither transaction could be avoided as a constructively fraudulent transfer. Together, the Court's rulings rejected all the claims the Debtor had asserted in Adv. No. 09-6099. The Debtor did not appeal the Court's judgment.

### b. The first mortgage holder's foreclosure action

Meanwhile, in May 2011, BMO Harris Bank National Association, the current holder of the first mortgage on Mission Corner ("the Bank"), filed a motion for stay relief. The Debtor initially opposed the motion, but later agreed to an order granting it, which was entered on September 16, 2011. The Bank soon filed a mortgage foreclosure action in state court. Because of its judgment against the Debtor, Village was named as a defendant. The Debtor's principal was also named as a defendant because it had an alleged second mortgage on Mission Corner. Village filed an answer and asserted a counterclaim against the Bank and a cross-claim against the Debtor's principal.

On September 24, 2012, the state court issued a decision ruling that the Debtor was in default on its obligations to the Bank and the Bank was entitled to foreclose its mortgage on Mission Corner. However, the court stayed any sheriff's sale until it could determine the respective rights of the Bank and Village.

### c. Unpaid postpetition real property taxes

As noted on Attachment 6 to the Debtor's monthly operating report for October 2012,[1] the Debtor has incurred but failed to pay postpetition debts to Johnson County for real estate taxes. This includes a debt of $91,699.36 that came due on December 28, 2010, and a debt of $93,318.31, that came due on December 31, 2011.

### d. The Debtor's Chapter 11 reorganization plans

While its bankruptcy case has been pending, the Debtor has filed a number of proposed disclosure statements and plans: (1) its first proposed disclosure statement and plan were filed in December 2009; (2) its "first amended disclosure statement" and "first amended plan" were filed in March 2010; (3) another "first amended disclosure statement" was filed later in March 2010; (4) a "second amended disclosure statement" was filed in October 2010 with a "second amended plan" attached; (4) a "third amended disclosure statement" was filed in February 2011 with a "third amended plan" attached; (5) a "fourth amended disclosure statement" was filed two days later with a "fourth amended plan" attached; (6) an "amendment to Debtor's fourth amended plan" was filed in March 2011; and finally, (7) the Debtor's "fifth amended plan" was filed in December 2012.[2]

Before Adv. No. 09-6099 was decided against the Debtor, its Chapter 11 plans included the assumption the Debtor would succeed in avoiding the development plan and

---

[1] Dkt. no. 163 at 24.

[2] At least one of the Debtor's pleadings refers to a "fifth amended disclosure statement," but the "fourth amended disclosure statement," Dkt. no. 90, filed February 23, 2011, is the most recent disclosure statement that appears on the court docket for this case.

6

plat that had been approved for Mission Corner, the sale of the lot to Village, and the declaration of covenants and restrictions that had been filed before the Debtor's current principal bought the half of the Debtor that had been owned by Village's principals. Even now, the Debtor's latest — the "fifth amended" — plan provides that the Debtor "will prepare, propound to the City of Leawood and seek the approval of a new economically feasible Development Plan for Mission Corner" that is acceptable to the Bank. Neither the plan nor the Debtor's latest disclosure statement, its "fourth amended" one, explains how the Debtor will be able to change the development plan for Mission Corner while the Debtor remains subject to the state court judgment directing it to specifically perform the activities required of it under the final development plan already approved for the property. In fact, this Court previously denied approval of the Debtor's "fourth amended disclosure statement," because, among other things, the Court had rejected the Debtor's effort to avoid the final development plan and the final plat, and the disclosure statement said nothing about how the plan would operate in the event that happened.[3]

**DISCUSSION**

As relevant in this case, § 1112(b)(1) provides that "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." Village contends there is "cause" to dismiss this case on a number of grounds, while the Debtor responds

---

[3]*See* Dkt. no. 102.

7

Case 09-23107    Doc# 175    Filed 12/26/12    Page 7 of 11

that there is not. Section 1112(b)(4) provides that "the term 'cause' includes" sixteen circumstances labeled (A) through (P). Although the word "and" appears between the last two circumstances in the list, a leading bankruptcy treatise says that courts have "almost unanimously" ruled that the list should be read as if "or" had been used instead.[4] It would be absurd to conclude all sixteen circumstances must be present before "cause" for conversion or dismissal can exist.[5] In fact, some of the circumstances are mutually exclusive. Subsection (J) is "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court," and subsections (L), (M), (N), and (O) all address circumstances that can occur only after a plan has been confirmed. A debtor could hardly experience failures under a confirmed plan when it had failed to obtain confirmation of a plan in the first place.

In this case, the Court finds it necessary to consider only two of the sixteen specified circumstances. Under § 1112(b)(4), "'cause' includes — . . . (I) failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief." The Debtor's own monthly operating reports disclose that it failed to timely pay its real estate taxes for 2010 and 2011 to Johnson County, and that it still has not paid them. This fact alone is enough to justify a finding of cause to convert or dismiss this case.

---

[4] 7 *Collier on Bankruptcy*, ¶ 1112.04[6] (Alan N. Resnick & Henry J. Sommer, eds.-in-chief, 16th ed. 2012).

[5] *Id*.

8

The Court is also convinced that "cause" exists as specified in § 1112(b)(4)(A), which says "'cause' includes — (A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation." The Debtor's monthly operating reports show that it has no income and no cash on hand except whatever money its principal chooses to give it. This is not surprising since the Debtor owns only partially-developed land, its only business is trying to develop and sell that land, and it has sold no lots in Mission Corner except for the one that was sold to Village in 2006. The Debtor's failure to pay its postpetition real property taxes for the last two years clearly establishes that there is a continuing loss to or diminution of its estate. And the fact the Debtor's "fifth amended plan" continues to assume the Debtor will somehow be able to escape the obligations imposed on it by the state court's judgment in Village's favor that require the Debtor to perform under the existing development plan and plat for Mission Corner demonstrates that there is no reasonable likelihood that its rehabilitation effort can succeed. The Court notes that because it uses the word "rehabilitation" rather than "reorganization," § 1112(b)(4)(A) has been interpreted to require something more than a liquidating plan.[6] In any event, the Debtor's only significant asset is being liquidated in the Bank's foreclosure action, and no sort of rehabilitation of the Debtor's business, such as it is, is possible.

This leaves only the question whether this case should be converted to Chapter 7

---

[6] *See* 7 *Collier on Bankruptcy*, ¶ 1112.04[6][a][ii].

9

or dismissed. The Debtor has four creditors, three of which have at least partially-secured claims and are owed more than $1 million each, and one unsecured creditor that is owed less than $67,000. The three secured creditors are all parties to the Bank's state court foreclosure action, and the state court has already ruled that the Bank is entitled to foreclose on the Debtor's interest in Mission Corner. The Debtor's ownership interest in Mission Corner is now clearly worthless, and there is nothing else in the Debtor's bankruptcy estate for a Chapter 7 trustee to try to liquidate. Since the Debtor's effort to avoid Village's judgment failed, there is also no apparent hope of bringing any assets back into the estate through avoidance actions. Clearly, the disputes among the three secured creditors can and will be resolved in the state court lawsuit. Under the circumstances, the proper remedy in this case is dismissal, rather than conversion to Chapter 7.

**CONCLUSION**

For these reasons, the Court concludes the time has come to end this bankruptcy case. The Debtor's effort to avoid the obligations imposed by Village's judgment has failed, and the Debtor has proposed no other course that might take it to a successful rehabilitation through a Chapter 11 plan of reorganization. Village's motion to dismiss will be granted.

**JUDGMENT**

The foregoing constitutes findings of fact and conclusions of law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure, which make Rule 52(a) of the

Federal Rules of Civil Procedure applicable to this matter. Based on those findings and conclusions, judgment is hereby entered granting Village's motion to dismiss. This case is hereby dismissed. As provided by Bankruptcy Rule 9021, this judgment will become effective when entered on the docket under Bankruptcy Rule 5003.

# # #